```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
NAYEEM MEHTAB CHOWDHURY,
WORLDTEL BANGLADESH LTD. and
WORLD COMMUNICATIONS
INVESTMENT INCORPORATED,

                            Plaintiffs,

        -against-

WORLDTEL BANGLADESH HOLDING,
LTD. and AMJAD HOSSAIN KHAN,

                            Defendants.
----------------------------------------------------------- X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 16 2009 ★
BROOKLYN OFFICE

**MEMORANDUM**
**DECISION AND ORDER**

08 Civ. 1659 (BMC)

**COGAN**, District Judge.

This case is before the Court on defendants' motion for judgment as a matter of law or, in the alternative, a new trial. Familiarity with the facts is assumed. The motion is denied.

The evidence at the trial was not only legally sufficient to present the case to the jury, but one sided in plaintiff's favor. Plaintiff's parents both testified that they met with the individual defendant and defendant admitted knowledge that plaintiff was being tortured; that defendant had attended the torture; and that defendant said he could stop the torture if plaintiff left Bangladesh and gave up control of the company. There was undisputed evidence that the Rapid Action Battalion is known for committing torture. The RAB did not come upon plaintiff by accident; there was no dispute that defendant contacted the RAB for the express purpose of having it take action against plaintiff. Plaintiff also testified that during his ordeal, his torturers made it clear they were acting at the behest of defendant.

The email that defendant admittedly sent to plaintiff's associate after plaintiff's arrest was particular damning – "fun starts now, if you know what I mean." Defendant's testimony both on

direct and cross-examination that he was being "sarcastic" in this email was somewhat shocking as the sarcasm was precisely the point of plaintiff offering this evidence. The jury easily understood that torture is not fun. Defendant's statement in the same email that "I am sure I will find out how much [plaintiff] bribed you to sign the unauthorized documents" supported an inference by the jury that defendant had access to the fruits of the torture and thus a co-conspiratorial or agency relationship with the torturers.

This evidence disposes of all of defendants' claims on this motion.

Judgment as a matter of law is appropriate only when "'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Jarvis v. Ford Motor Co., 283 F.3d 33, 43 (2d Cir. 2002) (quoting Fed.R.Civ.P. 50(a)). I am required to "consider the evidence in the light most favorable to the party against whom the motion [is] made" and "give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." Id. (quoting Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001)) (internal quotation marks omitted). The Court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (quotation marks and citation omitted).

Defendants do not come near to meeting this difficult standard. All of their arguments are based on their assumption that the jury cannot be permitted to draw inferences from the evidence that is not only logical, but compelled. Defendants' crabbed view of the evidence would apparently require plaintiff to show that defendants met with the torturers in a hotel room and committed their plan to writing. Of course, the law recognizes that such agreements are rarely provable by direct evidence and must frequently be established by inferences based on

known facts. "[C]onspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). The facts set forth above together with the other facts at trial were more than sufficient to permit the jury to infer that defendant had a deal with the torturers to extract business concessions from plaintiff by doing what they do best. That is sufficient for agency or conspiracy. See Doro v. Sheet Metal Workers Int'l Ass'n, 498 F.3d 152, 156 (2d Cir. 2007); Bondi v. Grant Thornton Int'l, 421 F. Supp.2d 703, 719 (S.D.N.Y. 2006).

There is nothing speculative about plaintiff's case; in fact, it was defendants who wanted the jury to speculate as they offered no evidence why the Rapid Action Battalion would arrest and torture plaintiff if not to accomplish defendants' business goal. The strongly compelled inference from the evidence was that defendants wanted to achieve their result by any means available, and when defendants filed their complaint against plaintiff with the RAB, they did it because they knew torture could achieve their goal. Similarly, there was ample evidence of ratification – defendant's statement to plaintiff's parents that he would get the torture to stop if plaintiff yielded the company and left Bangladesh was sufficient to get to the jury on that theory.

For similar reasons, the verdict was in no way against the weight of the evidence. I recognize that I have significant discretion in deciding whether to grant a motion for a new trial. See, e.g., Amato v. City of Saratoga Springs, 170 F.3d 311, 314 (2d Cir. 1999). In determining whether to order a new trial under Rule 59, the Court may independently weigh the evidence. See, e.g., Song v. Ives Labs, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). A jury's verdict, however, should not be disturbed unless it is seriously erroneous:

> The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence ...; and abstain from interfering with the verdict unless it is quite clear that the jury has

reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice.

Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir. 1978); see also Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000) ("A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.") (quotation marks and citation omitted). Here, the jury did not reach a seriously erroneous result. Indeed, based on the record that I have reviewed, it would be far more likely that a new trial would be necessary if the jury had ruled in defendants' favor.

In addition, I reject defendants' evidentiary challenges. First, defendants' objection to the RAB's statement to plaintiff that they were torturing him at defendant's behest was proper as either an agency or co-conspirator statement, as there was sufficient evidence *aliunde*, described above, of an agency and conspiracy. The statement was authorized by the agency and in furtherance of the conspiracy; the jury could reasonably infer that the reason the RAB let plaintiff know why they were torturing him was to induce surrender which would further the aims of the agency and conspiracy.

Second, there was no error in admitting the reputation evidence of the RAB as an organization that commits torture. The reputation evidence was not offered to prove that RAB actually tortured plaintiff – there was already plenty of evidence of that, and indeed defendants did not seriously dispute that plaintiff was tortured by the RAB. Rather, the evidence was offered to show that defendant knew, when he caused the RAB to arrest plaintiff, that torture would result. The evidence of reputation tended to rebut defendant's claim that what the RAB did was without his knowledge or participation.

4

Finally, I reject defendants' challenge to the jury instruction. The premise of the challenge is that plaintiff's agency theory and ratification theory are mutually exclusive. Defendants' effectively argue that if they had an agreement with the RAB to torture plaintiff, then they could not ratify what the RAB did since that was already part of their agreement. However, with defendants denying both any agreement with the RAB and after-the-fact ratification of the torture, it would have been fundamentally unfair to require plaintiff to elect either theory. The evidence allowed the jury to make inferences as to both, and they were properly instructed as to the factors for each. Moreover, there was no inconsistency. The evidence allowed the jury to find that defendant had a chance to stop the torture he had initiated and instead, he facilitated its continuation. In addition, there was more than sufficient evidence that defendant willfully participated with the RAB in the torture, and the instruction on that theory was therefore proper as well.

Defendants' motion is therefore denied.

**SO ORDERED.**

/s/(BMC)
/ U.S.D.J.

Dated: Brooklyn, New York
September 15, 2009